from Mr. Messenger to begin case number 3, Janus 25. Janus v. American Federation, AFSCME. So, Mr. Messenger. Good morning, Your Honor. Welcome back, Mr. Messenger, I should say. Thank you, Your Honor. Glad to be back. In this case, AFSCME asked this court to recognize a statutory reliance defense to Section 1983 that is much different than the good faith defense discussed by the justices in Wyeth v. Cole and later recognized by other appellate courts. In those cases, the courts recognized that good faith reliance on a statute can rebut the malice and probable cause elements of a claim arising from an abuse of a judicial process. Those decisions did not announce that any reliance on a statute is a defense to Section 1983, and for good reason. I don't think that's quite the breadth of the claim here, but what they're saying is that this is a suit for damages that you're bringing and it's in the nature of those other kinds of cases. It means that they have deliberately, I'll use that word, you're claiming that they've deliberately kept money that should be returned to Mr. Janus. Yes, Your Honor, but what I'm saying is that the justices in Wyeth v. Cole in the 2nd, 3rd, 5th, and 6th circuits did not announce that good faith is a defense to every 1983 claim. But this isn't every claim. Surely the fact that this particular statute, this particular arrangement, had been blessed by the Supreme Court and abode, which I will remind you, by a 5-4 vote, Justice Alito thought it was very clear, but four other justices didn't. I mean it was a highly contested area of the law. You were deep in the midst of much of this litigation. There were lots of different opinions floating around about this, but people were relying on abode. But that raises the question of why is reliance on a statute a defense to Section 1983? 1983, an element of 1983, is acting under color of any statute, which include Illinois' agency fee statute. So how can relying upon Illinois' agency fee statute, which is an element of 1983, also be a defense to 1983? But you're confusing two things. The under color of law means that you are sufficiently the state to be suable under that statute. So you don't bring a 1983 action, for example, against a private attorney who decides to take a case in federal court. They're not the state for that purposes. So the argument here, though, is that once whichever entity it is of the state enters into a collective bargaining agreement with a private entity, that private entity assumes the mantle of the state for that purpose, just as Wexford Health, who perform, you know, they're a private organization. They give medical care in the Illinois prisons. They're not themselves the state, but they're close enough. So you've got to be the state before 1983 is even in the picture. Once you're the state, though, then the question becomes, did you, an actor for the state, reasonably rely on a law? I disagree with the second part, Your Honor. I do agree that obviously the under color of state law goes to state action. That's all that means. And so your position has to be, and it seems to me this is contestable, especially people who love original intent. If we don't until 1982 come around to the idea that private parties can be sued under 1983, then maybe you shouldn't even be here at all. You should be in state court seeing if you can, some equitable way, get the money back. But let's put that to one side. You've got them as a state actor, and now the question is whether there's a good faith defense for their retention of monies that were paid legally. Exactly, Your Honor, and I submit that there is no good faith defense to a First Amendment claim. It's not a First Amendment claim, though. It's not a First Amendment claim. It's a claim for retention of the money. Because it violated Mr. Janus's First Amendment rights to compel him. Well, that was their reason for taking the money, but their reason for taking the money might have been, suppose Mr. Janus adhered to a religion that renders it a sin to go to a physician. And so Mr. Janus said, I don't want health insurance taken out of my paycheck. But the state took health insurance out of his paycheck anyway. Now it's still a claim for taking his money in a way that he didn't want them to take it. It's just not the same part of the First Amendment anyway. It's an establishment clause or free exercise claim underlying the reason. But you could have lots of reasons for taking the money, but the claim to get the money back is the same. Well, it lies under Section 1983, but again, it comes down to the question of why is good faith reliance on a statute a defense to a Section 1983 claim? Because Wyatt v. Cole suggests rather strongly that it's quite unfair to have parties. You couldn't sue the state, could you? The state isn't a person under Section 1983. I know that. That's why you can't sue it. I'm answering your question. Yes. Absolutely. So you find the nearest target you can find. The basis of Wyatt v. Cole and the cases that followed it is that malice and lack of probable cause are elements of abuse of process claims. And good faith, in turn, is a defense to the malice and lack of probable cause elements of an abuse of process claim. Justice Rehnquist was very clear about that in Footnote 1 of his decision. So was Justice Kennedy in his opinion. We are talking about the essential elements of the tort. Both of them said it is a misnomer to even call this a good faith defense. What we're talking about is a defendant can rebut malice and lack of probable cause by showing good faith reliance on a statute. And I submit that logic only applies to claims that are like abuse of a court process. Here, by contrast, a First Amendment claim under Janus does not require showing of malice or showing of lack of probable cause. But the reason they took the money, the mechanism they used for taking the money was the collective bargaining agreement and their understanding under the Illinois statute passed in the wake of Abood. Again, Abood comes out in 1977. 82 is the Illinois statute, so it takes a little while. And there's a process. There's a way that people get their paychecks when they work for a governmental entity at the state level, and the process is that certain monies are taken out of the check before the person sees it. Your Social Security is taken out, your taxes to various authorities. And so in that sense, that's how you get from the state to the union. Yes, Your Honor. It's a procedure that you're focusing on. But it's not a judicial procedure. And so the elements to a tort for abuse of judicial process or malicious prosecution only applies to misuses of judicial process. What difference does that make since 1983 is a constitutional tort by itself? Well, because the elements of an abuse of process claim don't necessarily transfer to every claim that can be brought under Section 1983. Here in Janus, the Supreme Court says the elements of a compelled speech claim in terms of taking of union dues is the taking of union dues without consent. That's it. Malice and lack of probable cause. Yes, Your Honor. Forgive me, but is it your position that the plaintiff received no benefit for his fair share dues, none whatsoever? None that he could be required to pay for, Your Honor. Under the Supreme Court's decision in Janus, Mr. Janus had no obligation to pay for any of the union's lobbying on his behalf. And I'd also mention that, you know, it's ultimately the state of Illinois that paid Mr. Janus's wages and provided benefits. The most the union did was bargain or lobby the state to extend that. And under the Supreme Court's decision, Mr. Janus does not have to pay for any of that First Amendment advocacy and therefore should receive back all the money he was compelled to pay unconstitutionally in this case. I don't see why if at some point there was an increase in wages that the union negotiated, Mr. Janus shouldn't have to disgorge that. He accepted the money. It would defy the Supreme Court's decision, Your Honor. The Supreme Court said it would violate Mr. Janus's rights for the government to require him to pay anything to ask me to bargain with the government. And that cannot be worked around by framing it as restitution or something back. The Supreme Court's decision on that is unequivocal. And on this point, you know, for several years, asking me unconstitutionally took $2,929 by our calculation from Mr. Janus and that our position is that AFSCME should have to make him whole. As the Supreme Court said in Owen v. City of Independence, elemental notions of fairness dictate that one who causes the loss should bear the loss. Here, Mr. Janus should not have to pay for AFSCME's unconstitutional conduct. You're assuming, of course, your whole brief assumes that we answer the retroactivity question in your favor. The Janus opinion itself really leaves that for another day as I read it. It doesn't say we're changing the past. It says don't go forward this way. I disagree, Your Honor. It leaves open the question of what happens to the past for sure. I submit that it's not open because under Harper and Reynolds v. Casket, it's been the law since the 90s that Supreme Court decisions are retroactive. Well, the retroactive, as was pointed out by Mr. West, the court has also been very careful to distinguish between whether there's a claim, what kind of remedy can be given. They don't mix them up. This is an instance in which perhaps retroactivity in the sense of paying back monies that are no longer being collected. No one is arguing anything about that. I believe that Reynolds v. Casket answers that question. In that case, the state of Ohio tried to get around retroactivity of a Supreme Court decision by saying, well, reliance on the old statute that was called unconstitutional will say is a remedy that you can still rely on that statute that was struck down as unconstitutional. The Supreme Court in Reynolds v. Casket said you can't get around retroactivity that way. You cannot get around retroactivity by fashioning a remedy based on reliance of the old statute. And yet that's exactly what AFSCME is asking for here today, to get around retroactivity by saying, well, we relied on the old unconstitutional statute. But that was when the state court is trying to do something that the Supreme Court had not called for. So, of course, state courts are not allowed to undo instructions from the U.S. Supreme Court. Of course, Your Honor, but I submit that this court also— That's what Reynolds v. Casket is saying. Given that Janus is retroactive to fashion a remedy to say, well, it will not have retro— Well, if we say given, you've answered the question. In my opinion—I'm sorry, Judge Rubin. No, I'm just moaning. With that, I have three minutes left, Your Honor. I'd like to reserve the rest of our time. I'll moan for just a minute because I wonder, is there a distinction between reasonable reliance and good faith? Because I see both of these used here and there. Maybe they're the same, but I know this whole thing turns on good faith. And I look at it more as good luck, frankly, that they've had a boot out there for a long time. And I don't think there's any doubt that I've had some problems with that boot in the past. But this is the only good news I see in this case, to be blunt about it. But I just wonder, as far as the good faith to the bitter end, is there some time when that changes into some other category? Well, I'd say two things, Your Honor. First, good faith as actually used in Wyatt v. Cole and the rest had both a subjective and objective element. And it referred to the malice and lack of probable cause elements at issue in that case. And then more specifically here, going back to your question about escrow, which I believe is what you're alluding to, in this case AFSCME refused to escrow the compulsory fees taken from Mr. Janus and his coworkers. But, you know, let me just remind you, Mr. Messenger, that it's very risky to predict exactly what the Supreme Court is going to do. And the example I'll give you is Dickinson. Everybody thought that when the Supreme Court took the Dickinson case, they were going to say that the warnings spelled out in the Miranda decision were not of constitutional magnitude. They were just an enforcement mechanism. Congress could replace them. The states could do something different. And lo and behold, that's not what the Supreme Court did. The Supreme Court, in opinion by the Chief Justice, Chief Justice Rehnquist, said, gee, this has been around for a long time, you know, and actually it really is of constitutional magnitude. So I just give that as an example. And we lower courts may sometimes think we know what they're going to do, but they do what they're going to do. I don't disagree with that, Your Honor. So I don't know why you have to start escrowing because you think you know what the Supreme Court's going to do. It's not that they knew. I've never taken the position that AFSCME should have predicted it, but rather they knew it was suspect. They knew it was being challenged. I'll go that far with you. Yes. And if you have two parties disputing… But I don't say suspect. Well, the Supreme Court called it suspect, that any union should have been on notice. That's what just five members of the Supreme Court said that. Four members didn't say that. Yes, Your Honor. But I submit that when you have two parties contesting over who is entitled to a piece of property, or in this case money, even if both sides have a good faith belief it's theirs, when the court ultimately says the money belongs to Mr. Janus, Mr. Janus should get the money. The fact that AFSCME took it in the interim, you know, possession does not trump legal ownership. Okay. Thank you, Your Honor. All right. I'll make sure you get a minute. Appreciate it, Your Honor. Thank you. Welcome back, Mr. West. Thank you, Your Honor. So let me pick up on several of the points that Mr. Messenger made. First of all, the issue that there's no good faith defense for a First Amendment claim. And I understand Mr. Messenger's argument to be that the cases that the Supreme Court dealt with in Wyatt and some of the other court of appeals cases were due process claims, and the most analogous to it is abusive process. Here's why that does not make a difference. In the first place, if the court had been requiring that you can only get a good faith defense if there is an element of good faith or scienter or motivation in the constitutional claim itself, the due process cases would have turned out differently because the constitutional issue in Wyatt and these other due process cases were whether the plaintiff's constitutional rights were violated because he was not given sufficient notice before his property was seized. You know, it seems to me like the case for good faith might be stronger in Ms. Moody's case than in this one because your client had an executive order from the governor which basically said, watch out, a boot is likely to be overturned soon, so you better put those fair share fees in escrow, but the union didn't do that. I mean, do you see that as a problem under the good faith defense at all? Thank you, Judge Rovner. No, I don't, for two reasons. The fundamental reason is that the good faith defense, what it's all about is basically the ability of private defendants to rely on existing law. What the governor said was his own personal opinion. Judge Gettleman actually in the court below held throughout the governor's lawsuit because he had no standing, he had no personal stake in this, but he certainly had no authority to change what the Constitution provided, what Abood provided. And the other point is on the escrow, I talked about this a little bit before, but let me come back to a point that Chief Judge Wood made, which is if we're going to put it in escrow, not only does that have serious implications for our ability to provide our services, but when do we put it in escrow and when can we take it out of escrow? Do we put it in escrow after the court overruled or reversed this court's decision in the Harris versus Quinn case? I know of people, and I'm thinking of myself actually, who gave speeches at ABA meetings saying the court couldn't get the fifth vote in Harris versus Quinn to overrule Abood. I think that issue is gone now. It's not going to come up again. Of course, I was wrong, but what was the union supposed to do then? And then the court granted cert in the Friedrichs case, and everybody knew, just like in the Dickinson case. Everybody knew that the court in the Friedrichs case was going to overrule Abood. Of course, it didn't for a different and very tragic reason, because Justice Scalia's untimely death. And then what do we do when we get into the situation where the Senate is dealing with what Supreme Court nominee is going to be confirmed in the outcome of the election? Are we really saying that a union is required at the risk of substantial liability to put money in escrow on the basis of the speculation? Whether Merrick Garland gets confirmed or not. Yeah, exactly. Can you tell me something, though? One of the points that your opponents have made is one about boundaries, basically. If we thought there was a good faith defense, they have argued that it's just this boundless – anytime somebody has a mistake of law, practically, it comes into effect. And then at the other extreme, we have this direct reliance on a directly applicable Supreme Court decision, which is good until it's not good anymore, Abood through Janus. Or any reliance on a state statute. So tell me, how broad is this rule you're arguing for? Good. Well, let me address first your initial question. The notion that – you didn't say it quite this way this morning, but I think Mr. Messenger's argument is basically that the good faith defense swallows the rule of private parties' liability. No. This is the exceptional case. The basis for the Section 1983 claim in this case is that the defendant's actions became unlawful only because of an after-the-fact decision of the Supreme Court overruling its 40-year-old precedent. The plaintiff would have had no cause of action had it not been for that. And so what is at issue here is this question. When the Supreme Court overrules an existing precedent, are the private parties liable under Section 1983 for actions that they undertook prior to that overruling? This is a case that's going to come up. To say that all 1983 cases is completely inaccurate because this is actually going to be only very few cases where you have this kind of a situation. Is that because you think it'll be hard to show reliance? Because obviously the Supreme Court sets the legal background for a great deal of activity. No, I think it's because there are relatively few cases where statutes are held unconstitutional, and particularly few where statutes are held unconstitutional by overruling an existing precedent. It happens, but there are few. So there are all kinds of other Section 1983 scenarios where this issue doesn't even arise. And then let me turn to your second question. So this is a case, I think actually this is, if I may say so, I think this is the easy case. Because if you compare this... You mean Mr. Janus' case now? No, no, no, I'm sorry, I mean both of these cases. Janus and Moody, okay, thank you. So this case where there is an existing Supreme Court precedent that nobody disputes that authorizes the action, and the Supreme Court overrules that precedent. This is a much easier case, I think, even than all of the Court of Appeals cases that we have in Wyatt and Pinsky and several other Court of Appeals cases, where the court said the defendant, in relying on a state replevin or attachment statute, was entitled to rely on that statute because of the presumption of statutory validity. Despite the fact that there was, in those cases, no on-point judicial precedent saying that these statutes were constitutional. It's simply determining that on the basis of the presumption of statutory validity. Here, we're way beyond that. We have not only the presumption of statutory validity, but we've got a directly on-point decision saying this is constitutional. So I think this is really a case where it's really an easier case to apply the good faith defense than it is in the Wyatt and Pinsky cases and so forth. Do you know the status of any of the pending 25 additional cases? Any changes since briefing? Judge Rovner, what I can tell you is there have been several more. We submitted a 28-J letter earlier this week in which we cited four additional district court cases that had been decided since we filed our Mooney brief. And all of them, and this brings now to 18 total district court cases that have decided the issue presented by these two cases. And all of them, without any exception, have held that unions are entitled to invoke the good faith defense and are not liable for damages after that. There are a number of other cases that are still pending in the district courts, but there has not been a single case in which the courts have found that unions are liable for following the law as it existed at the time of the actions they took. And I take it none of the – I don't mean to mix up the arguments, but none of these cases involved a restitutionary theory? To the contrary, Your Honor. About – I could count them up, but at least half of these cases were cases – were Mr. Mitchell's cases where he made exactly the same argument that he's making here. Okay. And it was rejected in all of them. Some of them rejected it summarily. Some of them had more extended legal reasoning explaining why that made no sense. Okay. I'd like to just turn for a moment to the retroactivity case that came up during Mr. Messenger's argument. I do want to make sure that we're distinguishing between retroactivity and remedy. As I said – The Reynoldsville casket case you're going to talk about? Well, yes. And Reynoldsville casket particularly. The problem with Reynoldsville casket was that the court found that the attempt to say, well, this is a remedial issue, there was not a bona fide remedial issue there. And that's why the court said, you know, no, we're not going to do that. But the court specifically held in Reynoldsville casket – let me see if I have the exact language – after saying that this is not a bona fide issue of remedy, then the court says, and this is at pages – I think I may have a typographical error here, 745 to 55, I believe it is. But the court says the ordinary application of a new rule of law backwards, which means that it's retroactive, say to pending cases may or may not involve a further issue of remedies. So the court is very specifically saying even though we held that in this particular case there is no remedial issue that changes the outcome, there are other cases – it depends on the facts of each case – where there will be a remedial issue. And in Reynoldsville casket, the court lists several scenarios under which you can have one, and one of them is the one that I think is applicable here, where there is a rule of law that is not a matter of retroactivity, but another rule of law which changes the result as far as the remedy goes. The only other thing I would say is that – just in concluding – is that, as Mr. Messenger mentioned, AFSCME for years received agency fees from the plaintiff. But it received these fees – the actions it took in receiving these fees and the state's public employer's actions in transmitting these fees were taken under law that existed at the time that said this arrangement for funding public sector collective bargaining is constitutional. Well, there was both the law and the collective bargaining agreement. Exactly. And the gist of the plaintiff's argument, both in the Janus and the Mooney cases, is that by its decision over ruling Abood, the court, after the fact, made these actions unconstitutional. After actions that were clearly constitutional and lawful at the time that they were undertaken, after the fact, become unconstitutional. And I think one can invoke Kafka or Orwell or something if one were so inclined, but I think this helps to explain why every single district court that has addressed this issue so far has found – had no problem at all in holding that unions should not be liable for – substantial liability for having followed the law as it existed. All right. Thank you, Your Honor. Thank you very much, Mr. West. Mr. Messenger, I promised you an extra minute. Thank you, Your Honor, very briefly. AFSCME makes the point or the argument of why it would be unfair to hold it liable in this situation given its reliance on existing state law. But what's absent from this analysis is the victim's interests. I mean, at the end of the day, Mr. Janus is the one who suffered injury. And in Owen v. City of Independence, the Supreme Court made rather clear in rejecting the idea that municipalities should have qualified immunity that it's an injustice for victims to be deprived of compensation to which they're due and that elemental notions of fairness dictate that one who causes the loss should bear the loss. And that in balancing the interests of the victims versus against a municipality, even if it did rely on existing law, the balance of equities strongly favor compensating the victim. And here I submit that even if there is any unfairness to AFSCME, Mr. Janus's interests and the interests of employees whose First Amendment rights were violated trump those interests. Thank you, Your Honor. All right. Thank you very much. Thanks to both counsel, everybody. We will take this case under advisement.